Good morning, Illinois Appellate Court, 1st District. Court is now in session. The 3rd Division, the Honorable Justice Nathaniel House presiding. Case number 1-7-2-1-1-6, People v. Manuel Asituno. Good morning. This case is being heard via Zoom due to the COVID crisis. My name is Nathaniel House. I'm a judge on the Illinois Appellate Court and presiding over this case with me are Justices Margaret McBride and Eileen Burke. We're going to proceed as follows this morning. We're going to allow each side to have, in turn, 10 minutes of uninterrupted presentation, after which the judges will have an opportunity to ask questions. The appellant can reserve time for rebuttal at the end, a few minutes. We do have another case after this, so we're going to keep you on a pretty tight time schedule on the 10 minutes. Does anyone have any questions about how we're going to proceed today? No. Will the attorneys who are going to make a presentation please state their names and the parties they represent. Good morning, Your Honors. My name is Emily Filpe, and I represent Manuel Asituno. Thank you. Good morning, Your Honors. I'm Assistant State's Attorney Veronica Cahildro-Malabia, and I represent the state in this case. All right. Very well then, Ms. Filpe, you may proceed when you're ready. Thank you. I'd like to reserve a couple minutes for rebuttal. Absolutely. Manuel was 11 days past his 18th birthday when the shooting in this case occurred. At this age, this makes him younger than any of the non-juvenile petitioners in all of the published cases cited throughout the six briefs and numerous motions in this appeal. Because Manuel's pro se successive post-conviction petition established a prima facie showing of cause and prejudice that his de facto life sentence was unconstitutional as applied to him and doesn't fail as a matter of law, this court should remand for further proceedings to allow him the opportunity to develop the record to show that he was the functional equivalent of a juvenile at the time of the offense. As the Illinois Supreme Court in Harris and Thompson instructs, young adult offenders, youthful offenders such as Manuel, who are 18 plus, are not entitled to the presumption that the Miller protections apply. Thus, youthful offenders must raise an as-applied challenge in a post-conviction petition where they demonstrate the possibility that they are akin to a juvenile. In his petition, Manuel has done this. He's alleged that his brain was not fully developed and he was akin to an adolescent and that he was underdeveloped psychologically and therefore still immature. He also attached scientific articles showing that brain development continues past 18 years and 11 days and into one's 20s. Thereby, he's established that he could show that he was like a juvenile at the time of the offense. In addition to his very young age, he pointed to his long-term addiction, his low IQ of 81, his limited education, his alcoholic father and addict mother, and that he was drunk and high at the time of the offense. Looking at the landscape of this area of law, the vast majority of the recent published decisions allow youthful offenders, all of whom are older than Manuel, leave to file their successive petitions in order to develop the records in their case, per Harris and Thompson's directive. Nor do Manuel's claims fail as a matter of law. In Buffer, the Supreme Court explained that to prevail in a claim based on Miller and its progeny, a juvenile must show two things. One, that he was subject to a life sentence, mandatory or discretionary, natural or de facto. And two, that the sentencing court failed to consider his youth and attendance characteristics as mitigation in imposing the sentence. Manuel has shown both. Under Buffer, his 48-year sentence is a discretionary, de facto, natural life sentence. And, as the record shows, the trial court failed to consider his youth and attendance characteristics as mitigation. Although I argued that the trial court did not consider many of the Miller factors, the two main ones are his age and the determination of whether he was permanently incorrigible. As acknowledged by the state, the trial court did not even mention Manuel's age at sentencing. The PSI was the only place where his date of birth was mentioned. While preparing for this argument, I noticed that throughout the PSI, it indicates that Manuel was 19, not 18, although it does have the correct date of birth. That Manuel was 18 was never mentioned, not in the PSI, or by defense counsel, or the state, or by the trial court at sentencing. The trial court statement did state that it read the PSI, but that's also not enough. In Buffer, the trial court similarly said that it read the PSI, and the Supreme Court determined that it was insufficient to show that the court considered Buffer's youth and attendance characteristics. The appellate court has similarly held this recently in Harvey and Carrasquillo. The state points to the trial court's comments about stupid teenage gang rivalries across the street from one another. The trial court's comments, however, are general musings that he noted he had said before in other cases. They're not specific to Manuel. They're not considerations of his specific youthful characteristics. Further, the trial court's comments indicate that it's holding Manuel's failure to act like an adult against him, and that instead of this rivalry and shooting, he should have made a thoughtful, mature decision to become friends with Colin, or to shoot in the air and they could laugh about it later. In contrast, in Lusby, the trial court specifically and repeatedly acknowledged Lusby's young age throughout the sentencing hearing. The trial court in this case also never made an explicit or an implicit finding of permanent incorrigibility. Instead, it focused on the senselessness of the crime and what Manuel could have done differently. Notably, unlike in Lusby, the state never argued that Manuel was irredeemable, and there was no evidence to support that. The record shows that he is rehabilitatable. He accepted responsibility by pleading guilty and apologizing to Colin's family at the sentencing, indicating that he is maturing and capable of rehabilitation. Also, although the state asked for 60 years, the fact that the trial court sentenced him to 48 suggests that the trial court did not believe that he was permanently incorrigible or intend for him to die in prison. Again, there's nothing in the record that Manuel could not be rehabilitated. This stands in stark contrast to Lusby, where the probation officers noted his violent tendencies, and the state in Lusby specifically argued that Lusby had no rehabilitative potential. The trial courts find that it was clearly a depraved act, an execution showing absolutely no respect for human life, where he terrorized the victim in a lengthy and brutal sex offense and execution-style murder, with the shooting and slashing her throat. And the trial court sentenced him to the maximum of 130 years. In terms of cause, Manuel could not have raised this in his first petition in 2003, as it's based on the building blocks of House, applying Miller to a non-juvenile, and Reyes, applying Miller to de facto natural life. In fact, prior to Buffer, whether Manuel's 48-year sentence constituted a de facto life sentence was even left to interpretation. The element courts have repeatedly held that Miller is sufficient to establish cause for youthful offenders, such as Manuel. They've held this in Thompson, Minifield, Johnson, Ross, Carrasquillo, Franklin, Bland. These cases are no longer outliers, as the vast majority of published decisions, considering whether the circuit court properly denied youthful offenders leave to file, hold that they should have been allowed to file and develop their Miller-based claims. It is no longer the rare case involving an emerging adult that's permitted leave to file petition, claiming the protections of Miller. Because Manuel has sufficiently pled that he was like a juvenile at the time of the offense, and his claims do not fail as a matter of law, this court should allow him leave to file so that an attorney can be appointed to help him develop the record to support his claims. At this point, I'm happy to answer any of your questions. Thank you. Justice Burke, do you have any questions? I do. Good morning, Ms. Filipe. How are you today? Good morning. Good. In all of the cases, were any of them a plea? The litany of cases that you've cited. Which one? Yes, Your Honor. Daniels was a plea. But Daniels was a negotiated plea, where we have a blind plea here. Okay. And did any of them not involve a mandatory sentence? Yes. Actually, Holman just was a discretionary sentence itself. Yeah. Okay. And I have one slight issue. You said that he accepted responsibility. My interpretation of the record was that he blamed the alcohol and the drugs and was not taking responsibility. In fact, he specifically said that were it not for him being under the influence of alcohol and drugs, he would not have committed this crime at all.  Sure. Yes, he did say that he was under the influence of alcohol and drugs. And he did say that were it not for the alcohol and drugs, he would not have made the same decisions that led to this offense. But he went on for many, his apology and his statement during sentencing was longer than that. The statement that he was high and drunk at the time, I view as a historical fact. He's stating fact. I mean, that that is an indisputable fact of the offense here. He was in an altered mental state. But he goes beyond that in his sentencing. He doesn't give that as the only reason that this happened. He apologizes for the offense. He apologizes to the family. He talks about his religious journey a little bit and keeping the family in his prayers. And he acknowledges to the family that they're probably not going to forgive him. But it does show some acceptance of responsibility. I mean, this happens in 2000. He's still not an adult when the sentencing occurs. But the fact that he pled guilty, he ended the trial, he pled guilty and he did do the statement is a big step. And contrast that to Lusby, who maintained his innocence at sentencing and said that it was a consensual sentencing act. And even Coleman, who still maintained his innocence at the time of sentencing. And I know there's a plethora of appellate court opinions applying the juvenile protections to non juveniles. The Supreme Court still has not spoken on that. Is that correct? Correct. But in fact, the Supreme Court specifically stated that there is a bright line rule of younger than 18. Did they not? Well, they have, but they talked about that bright line rule. Well, in Harrison Thompson, I'm going to say they they talked about that bright line rule in Harris because Harris raised a facial eighth amendment challenge. And the court said there's a bright line rule for facial as applied challenge. But the court did note that had he filed an as applied eighth amendment challenge, that that would have failed for a different reason. It would have failed for the same reason that the as applied proportionate penalties challenge failed, which was that it wasn't first raised in the trial court in his petition. It was raised for the first time on the appeal. So there wasn't a sufficient sufficient factual record developed in the trial court for that issue. So based on that, the only Supreme Court hasn't closed the door on this. They haven't specifically spoken to whether an as applied eighth amendment challenge can be raised by a youthful offender. OK, thank you. I have no other questions. Thank you, Justice. Justice McBride, do you have any questions? Yes, Miss filthy. Good morning. Good morning. There are two current cases involving pleas of guilty and you have already distinguished that this one was not a negotiated plea. There's a there's the Daniels case, and that was actually a mandatory life, wasn't it? I'm trying to remember. There's so many cases now. There are a lot. I believe it was. Yeah. And Daniels, but it was a negotiated plea, you know, so the state recommended naturalized. And there's a more recent case from the third district involving a 110 year sentence, also a negotiated plea. But he was, in fact, 16. But the court said that the plea of guilty should not bar remanding for a sentencing hearing. Johnson is, I think, that case. So you're you're saying there is no hurdle here as far as the plea of guilty. Is there another case from the first district involving an 18 year old that wasn't an actual mandatory life? Do you recall? Like I said, there's so many Ruiz Ruiz was 18 and it was a discretionary, but he got 40 years. Johnson got one hundred and ninety and that was discretionary. OK, I thought it was one hundred and ten. I thought it was 90 plus 20. But in any event. Now, the other thing is that. Do you believe we should at least discuss the Lusby case if we write this opinion supporting your position? Do we need to write about Lusby? You say it's really just a statement of what the law already is. Yes, I agree that with that, I just want to do one quick statement first, is that the question of whether a negotiated plea bars Miller claims is pending in the in the Illinois Supreme Court right now, actually in Jones. And yeah, so I just wanted to throw that out there, but for Lusby. OK, so what did Jones say? Oh, well, it's pending. I don't I don't I don't actually remember what it is, a plea of guilty where it was remanded for sentencing. Yes. And you say 16 or 18 or do, you know, I often I do not remember. I just that's all right. I just noticed that today. But for Lusby, it does just reiterate existing case law. Since Lusby was a juvenile, though, Miller directly applied to him. So it's a little different here, obviously, because Manuel has to first plead that he's the functional equivalent of a juvenile per Thompson and Harris. However, Lusby does provide, I think, some guidance as to whether Manuel's claims fail as a matter of law. If we can tell that the trial court sufficiently considered the Miller factors, which I do not think they did here, then we can consider, you know, the underlying merits and we can talk about Lusby. But Lusby does show. A very strong comparison of, you know, what a finding of a permanent of permanent incorrigibility would look like or could look like, which was very different from what we have here. All right. And then my last question is, we don't really know what a de facto life sentences for someone that's an adult. Do we? The court, the only Supreme Court hasn't really spoken on that. No, they haven't yet, Your Honor. You're assuming that 48 is a de facto life for someone over 18. Yes, if we're considering Manuel to be the functional equivalent of a juvenile, then logically buffers line of, you know, a natural life sentence being above 40 would also apply. In Buffer, there was Justice Burke gave a concurrence that suggested another way to determine a de facto life sentence. And that could be an alternative for these youthful offenders. She looked at the life expectancy. And here, if Manuel gets serves his entire 48 years at 100%, like he's sentenced to do, he will get out, he will be released when he's 66, I believe. I think so. And according to the Michigan studies that I cited in my opening brief that his life expectancy was somewhere in the 50s. So his sentence based on Justice Burke's calculation would not be a survivable sentence. Okay, thank you. Thank you, Justice. Going back to that de facto life sentence, when you look at a 18 year old or 17 year old gets a 40 year sentence. According to Justice Burke's logic, there's only a certain amount of life left for that person to live. Wouldn't the same hold true for someone who's a little bit older, 21, who gets a 40 year sentence? Wouldn't that be an even more severe sentence because they have less time to survive on this world? I agree with that, Your Honor. But keep in mind here, Manuel is just days past his 18th birthday. You know, he is, he's not a 21 year old. He is, like I said, the youngest in all these published decisions that we've seen. All right. All right, I have no further questions. Thank you. All right, Ms. Malavia, you may proceed when you're ready. Good morning, Your Honors and Counsel. May it please the Senate of the Court. Defendant's motion for leave to file a successive petition was properly denied because he failed to meet the cause and prejudice test for both his Miller Eighth Amendment claim and his Miller-based proportionate penalties claim. Your Honors, absent a viable Eighth Amendment claim by a juvenile, presumptions that have historically governed review of sentences apply in this case. These presumptions include that the court knows the law and follows the law, that the court consider all mitigating factors presented at sentencing unless defendant cites to direct evidence to the contrary in the record, and that a sentence that falls within the sentencing range is proper. In 2012, the U.S. Supreme Court in Miller held that the Eighth Amendment was violated when a juvenile under 18 was subject to a mandatory life sentence without the possibility of parole. So in Miller, the historically applied presumptions weren't viable because the court was bound by a sentencing scheme that mandated a life sentence for a juvenile. The juvenile's age and rehabilitative potential didn't matter because a life sentence was mandatory. But this case is very different from Miller, which doesn't even apply here for two reasons. First, defendant was an 18-year-old offender and was considered an adult by the U.S. Supreme Court in Miller and the Illinois Supreme Court in Buffer. Second, unlike Miller, this case does not involve a mandatory scheme that required the court to impose a life sentence. The sentencing range was 20 to 60. He wasn't subject to a mandatory firearm add-on. It was not in effect at that time. In fact, he was not subject to any mandatory provision. So this case is nothing like Miller. Defendant does not fall under the core protections of Miller because he was an adult and he received a discretionary sentence. In fact, your honors, the Eighth Amendment does not apply to defendant at all. Now, with respect to the proportionate penalties, Illinois courts have applied a Miller-based analysis to some young adult defenders. But here, defendant failed to meet the cause prong of the cause and prejudice test. The Illinois Supreme Court stated that merely citing scientific evidence and general facts of mitigation are not enough. Other than age, defendant failed to allege in his petition any factual basis to suggest that his particular brain development was akin to juveniles as required by Thomas and Harris. So he failed to allege any facts that brought him into the protected class of immature, youthful offenders. Therefore, he failed to show cause and there's no constitutional basis to set aside his sentencing presumptions. Instead, this court must require adult defenders like defendant to cite evidence in the record that shows that the trial court disregarded the relevant factors, including age and his attendant characteristics. And defendant has failed to do so. And since defendant was an adult defender, your honors, nothing prevented him from raising these claims earlier. Adult defenders have been able to raise these type of claims even before Miller. So Miller's issuance does not excuse defendant's failure to do so, and he's thus failed to show cause. Defendant has also failed to show prejudice. Keep in mind, your honors, that the trial court, again, is presumed to know the law and apply the law and to have considered all the mitigating factors presented at sentencing. Here, as in Lusby, the record shows that the court considered defendant's age and its attendant characteristics in sentencing him to 48 years. At sentencing, the people asked the court to impose a maximum sentence of 60 years, while defense counsel asked for 40. Thus, the record affirmatively shows that the court relied on mitigating factors imposed a much lesser sentence than the maximum. And presumably, those mitigating factors include age and the related Holman factors. And your honors, the record bears this out. As to the first Holman factor, the record shows that the court considered defendant's age and evidence of immaturity. Although the court did not expressly state for the record that defendant was 18 years old, the court was certainly aware of his young age and is presumed to have considered it. The PSI contained his date of birth. At sentencing, the court, in fact, discussed key characteristics associated with teenagers. And the courts expressed comments that reveal that he understood that teenagers, like defendant, tended to be impulsive, reckless, and susceptible to peer pressure. Defendant claims that the court's comments about stupid teen games were only general musings. But defendant ignores the rest of the court's comments, which address his particular actions and circumstances. And also here, defendant erroneously relies on cases involving juveniles, but he was an adult. So the normal sentencing presumptions apply, and they don't require the court to make specific findings. As to the second factor, the court also considered his family and home environment. The court acknowledged the difficulty that he experienced from being raised by an addicted mother and alcoholic father, and recognized the negative impact that that would have on children. But the PSI also showed that defendant was not abused nor neglected, and he told the court that his parents taught him to respect everybody and not to harm anyone. Contrary to his claim, the fact that the court referred to his getting older does not indicate that he did not consider the effect of his home environment. Rather, it's simply a statement of fact that defendant was not a juvenile. As to the third factor, the court considered defendant's degree of participation in any peer pressure, but he found that defendant, not co-defendant, was ultimately responsible for the murder. In fact, this court previously found that defendant properly pled guilty to murder, while the co-defendant pled guilty to aggravated discharge. And defendant's claim that he acted under peer pressure is completely belied by the record. Your honors, it was defendant who punched the victim in the face, not co-defendant. It was defendant who grabbed the gun from the co-defendant, waved the gun at the group of people, threatened the victim, and shot the victim. There's nothing in the record to support his belated claim that he acted under peer pressure from co-defendant. So that claim is absolutely mirrorless. The court was well aware of the facts of this case, which show the defendant acted freely and voluntarily. And as to the third factor, the court considered defendant's incompetency and ability to assist his defense. Your honors, the court ordered two behavioral clinical examinations prior to trial. And they show that defendant did not have a significant mental or psychological disorder or intellectual defect. He was capable of understanding Miranda. He was legally sane at the time of the offense, and he was fit for trial without medication. Although he had a low IQ and dropped out of high school, he demonstrated his ability to assist his attorney by writing and reading his letter in elocution. Finally, your honors, the court considered defendant's rehabilitative potential. The court acknowledged his difficult upbringing, his guilty plea, his statement in elocution. But the court found it significant that the gravity of the crimes increased as he got older. He committed this murder about six months after being released from custody. Indeed, the court refused to impose a maximum sentence, indicating that the court considered the rehabilitative potential of defendant and that he found that the defendant had some. Under proportionate penalties, the court considers both the seriousness of the offense and the rehabilitative potential. But your honors, the seriousness of the offense carries greater weight. Under these circumstances, the court is presumed to have considered all the relevant factors. And also, defendant's sentence falls squarely within the sentencing range and is therefore presumed to be constitutional. And contrary to defendant's claims, the court did not have to make an express finding as to incorrigibility. As in Lusby and in Holman, it can be reasonably inferred that after considering all the relevant factors, the court found defendant to be incorrigible. In light of the horrendous and senseless murder and his escalating criminal behavior as he got older. Like Holman and Thompson, defendant could have presented evidence supporting these factors at sentencing, but he failed to do so. Therefore, the court properly denied leave to file. And so based on the people's briefs and our argument today, the people asked this court to affirm that ruling. Thank you. Justice Burke, do you have any questions? Yes. Good morning, Ms. Malavia. How are you today? Good. Good morning. Okay. This was defendant's first adult offense. He was released. You brought up he had just been released six months prior from juvenile, from a juvenile adjudication, correct? Yes. Okay. The court didn't say the magic words incorrigible during sentencing, correct? Correct. So the court relied on, we can presume he relied on the PSI. Yes. But isn't it correct that the PSI continuously listed the defendant's age as 19? I know it gave his date of birth, the correct date of birth, but didn't it in the narrative say that he was 19 years old? With respect to when he committed the crime or when? Throughout the PSI, they referred to when he committed the crime as he was 19 years old. Right. And that was a mistake. But as we know that he was not a juvenile, he was an adult. And the court knew that he was a teenager. He discussed the teenager. So he was fully aware that he was a youthful offender. Okay. I don't think there's any constitutional violation or problem with that because the defendant was an adult. The court did not refer to his 81 IQ during sentencing, did it? No, it didn't. But it's presumed that he considered it because it was in the PSI. Okay. That's all my questions. Thank you. Thank you. Thank you, Justice. Justice McBride, do you have any questions? Yes, I have a couple. Good morning, counsel. Are you basically conceding that the fact that this was a plea of guilty doesn't amount to a hurdle for the defendant here? I think in this situation, because it wasn't a fully negotiated plea and there was a full sentencing hearing, the whole range of the sentencing in this particular case, I do not believe it's a hurdle. Maybe I said that the wrong way. I think it's important. What Miller requires is, you know, if this case is in the context of Miller, it requires that the court consider everything. And certainly the court considered that the defendant pled guilty. Okay. Maybe I didn't phrase my question correctly. Should that impact our decision at all? That in this case, it was a plea of guilty and there was a sentence imposed based on a plea of guilty. But maybe I'm not expressing my thoughts. Typically a guilty plea, defendant waives all constitutional claims. Usually those are fully negotiated plea. This was not a fully negotiated plea. So that in this case, it wasn't. This was not a fully negotiated guilty plea. No, it was a situation where defendant had a full sentencing hearing, a PSI was admitted, the full sentencing range was available to the court. And the court considered all the factors that were presented. What is the Jones case that opposing counsel mentioned that's before the Supreme Court? Are you aware of what that one is? No, Your Honor, I'm not. Okay. All right. So in this case, didn't you argue that there's a difference because this is a discretionary sentence? Yes. And hasn't, I mean, this has been a continuing argument of the state that you continue to distinguish between discretionary sentences, a natural life versus a de facto life and discretionary versus a mandatory. But hasn't the Supreme Court pretty much said that that isn't really the case when we're dealing with juveniles? The Illinois Supreme Court has indicated that in Holman, but what's important, there is a distinction between mandatory and discretionary. In Holman, the court applied the presumptions that I discussed. And what's key is that the defendant does not claim that any of the Holman factors were not developed below or underdeveloped below. And so as in Holman, this court should presume that those Holman factors were indeed considered by the court. One of the things you mentioned was that he hasn't really pled that his mind wasn't fully developed or his brain rather, excuse me, that he hasn't really set out the factors to get him back into the trial court. But isn't that kind of like a Hobson's choice? In other words, he hasn't been able to plead that, but the place he entered, he filed his petition. And now, because he didn't really have that opportunity, we shouldn't send it back? Or should he be given the opportunity to develop that at the trial court level? Well, I think Thompson and Harris clearly indicate that in order to have like a viable claim that the defendant has to plead something other than his age, the scientific evidence articles or general mitigating factors to show that he falls within the protected class of youthful offenders. So pursuant the Supreme Court, his claim is insufficient. All right, then that's really all I have at this time. Thank you. Thank you. You noted earlier that the transcript doesn't have the word incorrigible in it. But isn't it true that in Holman and the other cases where incorrigible was not present, there were other words used to indicate the trial judge believed the defendant should be incarcerated for the rest of his life, or at least not be allowed to walk in free society. Are those words present in this record? Yes, sir. The court went through the nature of the offense after considering all the other relevance and called it horrendous, senseless. There was a motion to reconsider. We're talking about rehabilitative. Rehabilitative. I think those all indicate that it could be reasonably inferred, as in Lusby and Holman, that this adult offender was incorrigible. We're not even sure that when you're talking about adult offenders that that finding has to be within. At the bottom line, what's important with respect to Miller is that all the factors were considered in weighing and determining the sentence here. And all the factors were considered here. It was developed below and it's presumed that the trial court considered the sentence. We're not even sure again that it's a de facto life sentence in light of the fact that we're talking with regards to an adult. All right. All right. Thank you. I have nothing else. Either judge have anything else. All right. Miss Phil P, you may take a couple of minutes for rebuttal. Just a couple quick points. One about the discretionary sentence. I wanted to just point out that in the supplemental reply, I stated that he was sentenced to a mandatory de facto natural life sentence. And I just wanted to point out that I made that in error. The firearm add-ons went into effect after the offense in this case. But as to the distinction between mandatory and discretionary, again, if we're considering Manuel the functional equivalent of a juvenile, then logically Holman should apply. And there shouldn't be a distinction between those two. Also, the state said that the trial court found that Manuel did not have any rehabilitative potential. The state said that this occurred during the decision on the motion to reconsider sentence. To my recollection, the court never made that statement. The court, when it denied the motion to reconsider sentence, just said that it stood by its sentence. There was no finding about whether he was permanently incorrigible. The state said also that the trial court's reference to the offense as horrible was an indication that it found Manuel to be permanently incorrigible. But the court spent a lot of time during sentencing talking about the senselessness of this crime and how this offense could have been avoided had Manuel just made friends with Colin and walked across the street and made a more mature decision and just made different decisions. So continually throughout the sentencing, the trial court faults Manuel for not making the mature decision. And the word horrible is much, much different than like in lesbian, you know, it was violent tendencies with a trial court specifically found Not specifically found, but the probation officers talked about no rehabilitative potential. The trial court talked about how Just this execution style offense and even in Holman, the trial court made a specific finding of no rehabilitative potential. And with that, Your Honors, I would just ask that this court remand for further proceedings. Thank you, Justice Burke and Justice McBride, do you have any questions based on what we just heard? This matter will be taken under advisement. The case is well argued, well briefed. We got a changing area of the law. So it was interesting. We will issue a decision in due course. Have a great day. Thank you.